IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JANELL GOMES,

    Plaintiff,                              CIV. NO. S-11-1790 KJM GGH PS

    vs.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. et al.,

    Defendants.                         FINDINGS AND RECOMMENDATIONS

_____/

        This diversity action, originally filed on July 7, 2011, was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(21). Plaintiff has paid the filing fee and is proceeding pro se with her first amended complaint.[1] Currently pending before the court is defendants Mortgage Electronic Registrations Systems, Inc. ("MERS") and Bank of America, N.A., as successor by merger with BAC Home Loans Servicing, LP's ("BANA") motion to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 14.) Plaintiff filed an opposition and defendants filed a reply. (Dkt. Nos. 18, 19.) At the hearing on

---

[1] Defendants first filed a motion to dismiss the original complaint on September 9, 2011. (Dkt. No. 6.) Subsequently, on November 1, 2011, Plaintiff filed a first amended complaint. (Dkt. No. 11.) The court then granted Plaintiff leave to amend her complaint under Fed. R. Civ. P. 15(a)(2) and denied defendants' motion to dismiss without prejudice as moot. (Dkt. No. 13.) The first amended complaint was deemed to be the operative complaint. (Dkt. No. 13.)

defendants' motion, plaintiff appeared pro se and Craig Baumgartner appeared on behalf of defendants. After considering the papers in support of and in opposition to the motion, the parties' oral arguments, and the applicable law, the court FINDS AS FOLLOWS:

BACKGROUND

The background facts are taken from the operative first amended complaint, unless otherwise noted. On August 8, 2007, plaintiff executed a promissory note in the amount of $220,000 secured by a deed of trust on her real property at 7706 Spring Valley Avenue in Citrus Heights, California. (See First Amended Complaint ["FAC"] ¶ 6; Defendants' Request for Judicial Notice, Dkt. No. 15 ["RJN"], Ex. A at 2.)[2] The deed of trust identifies Janell A. Gomes as the borrower; Countrywide Home Loans, Inc. as the lender; CTC Real Estate Services as the trustee; and MERS as the nominee for the lender and the lender's successors and assigns, as well as the beneficiary under the deed of trust. (FAC ¶ 6; RJN Ex. A at 1-2.)

Plaintiff alleges that Countrywide subsequently transferred or assigned the loan to another party, and that further transfers and assignments were made after that. (FAC ¶ 11.) Despite these transfers, no assignment of the mortgage was recorded, and the current records still reflect that MERS is the nominee for the lender and the lender's successors and assigns. (FAC ¶ 12.) However, according to plaintiff, neither Countrywide nor the current assignee/transferee of the loan is a member of MERS and therefore MERS allegedly cannot act as their nominee. (FAC ¶¶ 10-11.) On March 14, 2011, plaintiff sent a notice to MERS purportedly rescinding any previous authorization she gave for MERS to act as the nominee on the deed of trust, and requesting that MERS cancel the deed of trust. (FAC ¶ 15.) To date, MERS has failed to comply with plaintiff's request. (FAC ¶ 15.) Plaintiff claims that, since MERS is not owed anything and is not the actual creditor, the continuing inclusion of its name on the deed of trust is

---

[2] The court may take judicial notice of the deed of trust, because it is a public record whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b); Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds, Astoria Fed. Sav. Etc. v. Solimino, 501 U.S. 104 (1991).

a false statement in the county record, clouds title to the property, and impairs its market value. (FAC ¶¶ 13, 16-17.)

As to defendant BANA, plaintiff alleges that in 2009, BANA began making representations to plaintiff that it was the servicer of her mortgage and that plaintiff should make her payments to it. (FAC ¶ 25.) In August, 2010, BANA even offered plaintiff an incentive to open an account with Bank of America to allow for automatic mortgage payments to be made from that account, which plaintiff did. (FAC ¶¶ 28-29.) Subsequently, after "hearing reports in the media of the serious problems of fraud within the mortgage industry," plaintiff decided to investigate her own mortgage. (FAC ¶ 31.) Plaintiff sent BANA a request which, in part, sought an accounting of (i) to whom BANA was sending plaintiff's monthly payments and (ii) documentation showing that the party to which BANA was sending plaintiff's payments was the actual mortgage owner at the time. (FAC ¶ 32.) BANA did not provide this information. (FAC ¶ 32.) Plaintiff now contends that BANA is not the mortgage servicer for the actual creditor/owner of the mortgage, is not authorized by the actual creditor/owner to act as the mortgage servicer for plaintiff's mortgage, and (based on information and belief) has not been sending any of plaintiff's payments to the actual creditor/owner of the mortgage. (FAC ¶¶ 23, 33.) Plaintiff further contends that BANA engaged in "false representations, deceptive means, and actions" and "wrongfully obtained monies" from her. (FAC ¶¶ 19-20, 34-35, 37-38.)

Plaintiff's first amended complaint contains four causes of action: (1) cancellation of the deed of trust against MERS; (2) conversion against BANA; (3) violation of the federal Fair Debt Collection Practices Act ("FDCPA") against BANA; and (4) violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA") against BANA. (FAC at 6.)[3]

\\\\\

---

[3] Plaintiff has clarified in her opposition that the first amended complaint does not, explicitly or implicitly, attempt to state a claim under the Real Estate Settlement Procedures Act ("RESPA"). (See Pl's Opp., Dkt. No. 18, at 8, 10 n.7.)

DISCUSSION

In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). However, to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

The court now proceeds to analyze plaintiff's causes of action in accordance with the principles outlined above.

First Cause of Action for Cancellation of Deed of Trust

In support of her claim for cancellation of the deed of trust, plaintiff contends that the inclusion of MERS's name on the deed of trust is a false statement in the county record, clouds title to the property, and impairs its market value.

Section 3412 of the California Civil Code provides that "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. Civ. Code § 3412. Here, plaintiff fails to allege why the deed of trust is void or voidable, and how she has suffered or will suffer serious harm as a result of MERS's designation in the deed of trust.

California courts have held that MERS[4] may properly serve as a beneficiary and nominee for the lender when the deed of trust so specifies. See Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1156 n.7, 1157-58 (2011) (holding that under California law, MERS may initiate a foreclosure as the nominee, or agent, of the noteholder); see also Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009) (noting that "courts have been clear to allow MERS to conduct the foreclosure process when granted the power of sale provision"). Thus, the mere status of MERS as nominee for the lender and beneficiary under the deed of trust cannot cause plaintiff any injury.

Furthermore, plaintiff's allegations that neither Countrywide nor the current assignee/transferee of the loan is a member of MERS and that MERS therefore cannot act as their nominee are unavailing. The deed of trust specifically authorized MERS to act as the nominee for the original lender, Countrywide. (RJN, Ex. A at 2.) Whether Countrywide is officially a member of MERS or not is irrelevant here – the fact remains that Countrywide, via the deed of trust, authorized MERS to be its nominee and beneficiary under the deed of trust. MERS on its part does not object to that designation and has apparently consented to it. Additionally, plaintiff's allegation that the current assignee/transferee of the loan is not a member of MERS is conclusory and entirely speculative, given that plaintiff represents that she does not even know the identity of the current assignee/transferee of the loan.

\\\\\

\\\\\

---

[4] California case law explains the role of MERS as follows: "MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members." Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1151 (2011).

Finally, to the extent plaintiff attempts to state a claim for rescission under TILA based on an alleged violation of 15 U.S.C. § 1641(g),[5] such a claim is time-barred. See 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction...."); 12 C.F.R. § 226.2(a)(13) ("Consummation means the time that a consumer becomes contractually obligated on a credit transaction"); see also King v. State of California, 784 F.2d 910, 913 (9th Cir. 1986) (holding that TILA claim for rescission of home loan was barred by the three-year absolute limitation on rescission actions set out in 15 U.S.C. § 1635(f)). Here, the transaction was consummated on August 8, 2007, and this action was filed long after August 8, 2010.[6] Therefore, any purported TILA rescission claim is time-barred. Moreover, plaintiff fails to allege that she suffered actual damages or incurred finance charges as a result of any alleged failure to make disclosures under 15 U.S.C. § 1641(g). Byrd v. Guild Mortgage Co., 2011 WL 6736049, at *5 (S.D. Cal. Dec. 20, 2011) (finding no valid claim under 15 U.S.C. § 1641(g) where the plaintiff fails to allege that he or she suffered any actual damages or incurred any finance charges related to the failure to provide notice); Beall v. Quality Loan Service Corp., 2011 WL 1044148, at *6 (S.D. Cal. March 21, 2011) (accord).

In sum, because plaintiff has not shown that the deed of trust is void or voidable and that she has suffered or will suffer any serious harm as a result of MERS's designation in the

---

[5] 15 U.S.C. § 1641(g) provides that: "[i]n addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including – (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor."

[6] Plaintiff also claims that, on or about March 14, 2011, she sent a notice to MERS rescinding any prior authorization she may have given for MERS to continue acting as the "nominee" for the lender on the deed of trust. (FAC ¶ 15.) Plaintiff provides no authority for the proposition that a borrower may unilaterally rescind an entity's authority to act as the nominee for the lender and its successors or assigns. In any event, even if this notice were construed as some purported exercise of TILA rescission rights, it was still sent after August 8, 2010 and therefore untimely.

deed of trust, her cause of action for cancellation of the deed of trust against MERS should be dismissed.  Because plaintiff is unable to cure the deficiencies of this cause of action through further amendment, leave to amend would be futile and the cause of action should be dismissed with prejudice.

<u>Second Cause of Action for Conversion</u>

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." <u>Burlesci v. Petersen</u>, 68 Cal. App. 4th 1062, 1065 (1998).

In support of this cause of action, plaintiff merely alleges that BANA "took between $1725 and $1645 per month from plaintiff's bank account (for a total of $27,125) without any authorization from plaintiff to do so...[BANA] had no right to remove the funds from the account, and plaintiff has been damaged by defendants [sic] removal of the funds from the account."  (FAC ¶¶ 19-20.)  Presumably, these allegations are premised on plaintiff's allegations elsewhere in the first amended complaint that BANA is not the mortgage servicer for the actual creditor/owner of the mortgage, is not authorized by the actual creditor/owner to act as the mortgage servicer for plaintiff's mortgage, and (based on information and belief) has not been sending any of plaintiff's payments to the actual creditor/owner of the mortgage.  (FAC ¶¶ 23, 33.)

As the court indicated at the hearing, it understands plaintiff's frustration with the fact that she has little more than a notice by mail to rely on with regards to where mortgage payments should be directed.  In light of the frequent assignment of notes, securitization, and reports concerning mortgage fraud, plaintiff's reluctance to take such notices at face value is understandable.  Nevertheless, to survive a motion to dismiss, plaintiff must plead facts beyond mere conclusory assertions from which the court can draw the reasonable inference that BANA is not the mortgage servicer for the actual creditor and therefore wrongfully converted her mortgage

7

payments.

Here, plaintiff's complaint provides no facts to suggest that the payments taken from her bank account constituted anything other than payments due under the loan she undisputedly received in August of 2007. For example, plaintiff does not allege that a third party has asserted a duplicative interest in the loan or that the supposed "actual creditor/owner of the mortgage" has notified plaintiff of a default based on failure to make payments. As discussed above, a court cannot "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see e.g. Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.")[7] For these reasons, plaintiff's cause of action for conversion against BANA should be dismissed.

Ordinarily, where factual allegations are lacking or inadequate, the court would grant plaintiff further leave to amend her complaint. However, at the hearing on defendants' motion to dismiss, plaintiff conceded that she had not received a notice of default, notice of foreclosure proceedings, or any other notice from a third party tending to suggest that her mortgage payments were not being directed to the actual creditor. Accordingly, leave to amend would be futile, and the conversion claim against BANA should be dismissed with prejudice.

\\\\\
\\\\\
\\\\\

---

[7] Indeed, plaintiff's allegations regarding BANA are also inconsistent. For example, plaintiff first alleges that she received no notice of the transfer of the loan servicing rights to BANA. (FAC ¶ 24.) However, in the very next paragraph, plaintiff alleges that BANA did notify her that it was the new servicer of the mortgage and that plaintiff should make her monthly mortgage payments to BANA. (FAC ¶ 25.)

<u>Third and Fourth Causes of Action for Violation of the Federal Fair Debt Collection Practices Act and California's Rosenthal Fair Debt Collection Practices Act</u>

The first amended complaint further alleges that BANA engaged in "false representations, deceptive means, and actions" in violation of 15 U.S.C. § 1692e and Cal. Civ. Code § 1788.13(i). (FAC ¶¶ 34, 37.) As an initial matter, plaintiff fails to allege specific facts regarding any improper debt collection efforts by BANA. Plaintiff's reference to "false representations, deceptive means, and actions" is vague and conclusory, and therefore fails to state a claim for violation of the FDCPA or RFDCPA. See <u>Arikat v. JP Morgan Chase & Co.</u>, 430 F. Supp. 2d 1013, 1026-27 (N.D. Cal. 2006); <u>Usher v. Greenpoint Mortgage Funding, Inc.</u>, 2010 WL 4983468, at *6 (E.D. Cal. Dec. 2, 2010).

More importantly, plaintiff fails to allege any facts indicating that BANA is a debt collector for purposes of the FDCPA or RFDCPA. To state a claim under the FDCPA and RFDCPA, a plaintiff must allege that the defendant is a debt collector as defined under these acts. <u>Izenberg v. ETS Services, LLC</u>, 589 F. Supp. 2d 1193, 1198-99 (C.D. Cal. 2008) ("Like the FDCPA, the RFDCPA applies only to debt collectors").[8] However, it is well established that mortgage servicing companies are not debt collectors for purposes of the FDCPA or RFDCPA. See <u>Usher</u>, 2010 WL 4983468, at **6-7; <u>Lal v. American Home Servicing, Inc.</u>, 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010); <u>Glover v. Fremont Investment & Loan</u>, 2009 WL 5114001, at *8 (N.D. Cal. Dec. 18, 2009); <u>Nool v. HomeQ Servicing</u>, 653 F. Supp. 2d 1047, 1052-53 (E.D. Cal. 2009).

---

[8] The FDCPA defines "debt collector," in pertinent part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law." Cal. Civ. Code § 1788.2(c).

Although plaintiff makes the bare allegation that BANA is not the mortgage servicer for the actual creditor of plaintiff's loan, plaintiff has provided no facts in support of that conclusory assertion. Again, plaintiff does not allege that a third party has asserted a duplicative interest in the loan or that the supposed "actual creditor/owner of the mortgage" has notified plaintiff of a default based on failure to make payments. To the contrary, according to the first amended complaint, plaintiff has consistently been making payments to BANA and only started questioning BANA's authority to accept her mortgage payments after unrelated, general reports in the media concerning fraud in the mortgage industry. (FAC ¶¶ 25, 28-32.) This court cannot "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell, 266 F.3d at 988.[9] Furthermore, as discussed above, plaintiff at the hearing essentially admitted that she does not have any specific facts indicating that BANA is not the mortgage servicer for the actual creditor, suggesting that leave to amend would be futile.

Thus, because plaintiff cannot provide any facts suggesting that BANA is a debt collector for purposes of the FDCPA and RFDCPA, her causes of action under these statutes should be dismissed with prejudice.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (dkt. no. 14) be granted;

2. The action be dismissed with prejudice; and

---

[9] Plaintiff's citation to an unpublished California Court of Appeal decision in DeMucha v. Wells Fargo Home Mortgage Inc., 2011 WL 2612835 (Cal. App. Jul. 5, 2011) is unavailing. Not only was DeMucha a quiet title action without any claims under the FDCPA or RFDCPA, but it also did not apply the legal standards outlined in Twombly, Iqbal, and related federal case law in resolving the state court demurrer brought by the defendant in that case. As a federal court, this court applies federal procedure and precedent in reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 3, 2012

          /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH/wvr
Gomes.1790.mtd.fr.wpd